## BENJAMIN S. PRETTYMAN and SAMUEL P. BAILEY

### *v.*

## JOHN BARNARD.

1. ANSWER IN CHANCERY — *exceptions to — effect of abiding by.* If a party to a suit in chancery, chooses to abide by his exceptions to an answer to his cross-bill, and which are disallowed, the answer is properly taken for true.

2. COLLATERAL — *deposit of — not payment.* Where notes of third parties are placed in the hands of a creditor as collateral, but are not paid, the party depositing them, can claim no credit for the amount due by them.

3. REHEARING — *discretionary.* A motion for a rehearing in chancery, is addressed to the discretion of the court, and error cannot be assigned on refusing it.

4. DECREE — *reciting service of process — evidence of service.* Where the decree recites the fact that process was issued, and there is nothing showing it was not served, it will be considered as served, unless the party will file an affidavit, that he was not served.

5. ABSTRACT — *dismissal for want of — discretionary.* It is discretionary with this court, to dismiss a cause for want of complete abstract, or for noncompliance with a rule to furnish abstract by a certain time.

ERROR to the Circuit Court of Tazewell county; the Hon. JAMES HARRIOT, Judge, presiding.

This was a bill in chancery in the Circuit Court of Tazewell county brought by John Barnard against Abraham Brown and Amanda, his wife, Samuel P. Bailey and Benjamin S. Prettyman, to foreclose a mortgage executed by Brown and wife, to Bailey, on the 14th of October, 1853,

and assigned by Bailey to Barnard. Prettyman was made a defendant on account of some supposed interest in the premises.

It appeared that Brown was the owner of the land mortgaged, and was indebted to Bailey in the sum of $16,400, by twenty three promissory notes, twenty of the notes being each for $300, and payable in nine and a half and ten years from their date, and one note for $10,000, payable ten years after its date; one note for $200, payable January 1st, 1854, and one for the same amount due May 1st, 1854, and all of them dated October 14th, 1853.

On the 2d of October, 1855, Bailey assigned and delivered all these notes that were to be due after October 4th, 1855, and mortgage, to Barnard, the notes due before that day, having been paid.

Bailey in his answer, denies that Barnard has any interest in those notes, and alleges, that on the 2d of October, 1855, he became indebted to Barnard in the sum of $6,000, for which he executed his promissory note payable on demand with interest, and at the same time he assigned these notes of Brown, together with other notes for the purpose, that Barnard should, when he collected them, pay the note of $6,000, and if Bailey paid the note, Barnard was to surrender up all these securities. Bailey alleges that Barnard, at different times, received divers sums of money in payment of this indebtedness in cash, and part of other securities placed in his hands, namely : a note signed by M. Tackaberry, dated April 1st, 1854, for the sum of $384, and another note of the same date for $384.37, both of which Tackaberry paid at maturity. He also alleges that Barnard transferred to one Reuben Barnard, being part of the securities, two notes, one due August 21st, 1857, for $3,019.9, and the other due August 21st, 1858, for $370.46, both notes signed by Benjamin Kellogg, Jr., and payable to Bailey, and which notes he alleges, are now in judgment in the County Court of Tazewell county in favor of Reuben Barnard. Bailey also alleges

that Nathan P. Walton being indebted to him in the sum of $3,200, it was agreed between him and Walton, that if Walton would pay Barnard the amount thus due, he, Bailey, would release him, and he avers that Walton did pay Barnard that amount in part payment of the $6,000.

Bailey further alleged that in the winter or spring of 1856 or 1857, his note was placed in the hands of Reuben Barnard as agent of John, for collection, and at the request of this agent, he drew a draft in favor of Reuben, on one James Miller, dated April 1st, 1857, payable sixty days after date, $1,000, which was paid and credited by Reuben, on the note while he was in possession of it. Bailey claims other sums as paid to Reuben Barnard which he specifies.

Bailey claims that Brown and wife, had released to him all their right in the premises mortgaged, by deed dated May 2d, 1856, and that they have no further interest in them, only that they shall stand as security for Brown's notes. Bailey claims that the moneys he has paid to Reuben are a set off against Barnard's claim against him, and expressly avers that the only consideration of the assignment of Brown's notes and mortgage was as a collateral to secure the note he had executed to Barnard for $6,000, and he asks for an account from Barnard.

A replication was filed to this answer, on the 20th of February, 1860, and on the 19th of June, 1860, Bailey filed his cross-bill against John Barnard, which is for the most part, a recitation of the statements contained in his answer to Barnard's bill, except as to the arrangement with Walton. In his cross-bill he avers that, in pursuance of the agreement he made with Walton, Barnard sold and transferred to Walton, $3,000 of his interest in this $6,000 note, on which, Walton agreed with Bailey that so soon as he could get his, Bailey's note, he would endorse on it this $3,000 and interest, but instead of getting the note from Barnard, and after contracting other indebtedness, Walton departed from the State, and he charges Barnard with combination with Walton to defraud him, and avers that he has paid the $6,000 note in full.

Barnard answered the cross-bill, denying all the material allegations in it.

Bailey filed exceptions to the answer, which were disallowed by the court.

At the September term, 1860, the court entered a decree reciting orders of publication against Brown and wife, and that Prettyman had been served with process more than ten days before the first day of the February term, 1860, and process returned not found, as against Brown and wife, and found the sum of $3,526 still due on the $6,000 note, and directed, if the money was not paid in twenty days from the adjournment of the court, the mortgaged premises should be sold, etc.

At the same term Bailey made a motion to vacate the decree which was allowed, and on a rehearing, at the February term, 1861, the original decree was confirmed with a modification, that all the collaterals should be returned to Bailey on his paying the amount of the decree.

At the June term following, Bailey again applied for a rehearing, which the court refused, and Bailey excepted.

Bailey brings the case here by writ of error, and assigns the following as error:

1. The court erred in overruling the exceptions filed in said cause to the answer of the defendant J. Barnard, to the cross bill.

2. The court erred in not setting off the two Kellogg notes against the $6,000 note in the pleadings mentioned.

3. The court erred in not setting off the Milner draft of $1,000 in the pleadings mentioned against the said $6,000 note.

4. The court erred in not granting a rehearing upon the petition of the said Bailey.

5. The court erred in entering a decree against B. S. Prettyman without his having been served with process.

6. The court erred in not compelling John Barnard to account for and deliver up the notes of Nathan P. Walton.

Mr. B. S. PRETTYMAN for the plaintiff in error

Mr. C. A. ROBERTS for the defendant in error.

Mr. JUSTICE BREESE delivered the opinion of the court:

In this case, when considered in conference, it was found the abstract and brief of plaintiffs in error were so imperfect and unintelligible, that we caused a rule to be entered against them, and a copy served on them by the clerk, that if a proper and intelligible abstract and brief were not furnished within sixty days from the day of entering the rule, the writ of error would be dismissed. There has been no compliance with this rule, and more than sixty days have elapsed since it was entered. We might, therefore, with propriety, dismiss the writ of error.

If however, we are to decide the case on the abstract and brief furnished, we have no hesitation, if we understand them, to affirm the decree, as no error is pointed out sufficient to reverse it. Bailey chose to abide by his exceptions to defendant's answer to his cross-bill, which being disallowed, and no replication put in, the answer was properly taken for true, and thus the whole case was disposed of. None of the exceptions, as we understand them, were well taken, and the court did not err in disallowing them.

As to the Kellogg notes, it is shown they were received merely as collateral security, and having never been paid, Bailey could claim no credit on the note and mortgage for their amount. As to the alleged indebtedness of defendant in error to Walton, that is expressly denied in defendant Barnard's answer. Both the Kellogg notes and Miller draft, as the receipts show, were, when paid, to be credited on the note of $6,000, but not otherwise. Not having been paid, they could not be set up as a credit, or as a set-off.

The motion for a rehearing was addressed to the discretion of the court, and there was no error in refusing it. In the absence of a replication to the answer of Barnard to Bailey's cross-bill, the answer was properly held to be true, and disposed of the case.

The record shows all the parties were served with process, and a proper rule to answer taken against them. If the summons has been lost from the files, the defendant in error should not be prejudiced thereby. The decree recites the fact that process was served, and there is no evidence it was not served. There is no affidavit of Prettyman in the record that he was not served with process. He appeared in the cause as solicitor for Bailey and for himself, and cannot now say, he was not served with process. It does not appear that Prettyman had any interest in the suit. He appears to be a nominal party merely.

With the best understanding we can get of this case from the imperfect manner in which it is made up and presented, we are satisfied the decree was right, and that it should be affirmed.

*Decree affirmed.*